JOHN A. BARNES, III,

                Plaintiff,

v.                                           Case No. 25-cv-1495-pp

MANITOWOC COUNTY JAIL, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff John A. Barnes, III, who was incarcerated at the Manitowoc County Jail when he filed the complaint and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging violations of his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.   Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On October 10, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $0.50. Dkt. No. 6. The court received $5.00 on November 5, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff alleges that on September 12, 2025, while confined at the Manitowoc County Jail, he requested a Satanic Bible on the jail's kiosk system to practice his religion (Luciferian). Id. at 3. He says that he has seen others ask for religious materials through the kiosk and gain access to Bibles and services for their religious beliefs. Id. In response to the plaintiff's request, C/O Maloney (not a defendant) allegedly responded, "This would have to be mailed in from an outside approved source." Id. The plaintiff states that later that same day he entered a grievance on the kiosk. Id. He alleges that two days later, he submitted step 2 of the grievance procedure, and a few days after that

3

he appealed, which is the final step in the grievance process. Id. Defendant Mancheski allegedly denied the plaintiff's appeal, stating, "Either an approved clergy member can drop off a new Bible of your choice or you can have a new Bible of your choosing mailed in via a bookstore company." Id.

The plaintiff alleges that jail staff provide Bibles and Qurans to Christian and Muslim incarcerated individuals at no charge. Id. He asserts that by requiring him to pay for religious books, or have family members pay for religious books, he is not being offered the same religious freedom as individuals who practice other religions. Id. at 4. The plaintiff states that he will not be able to freely and openly practice and study his religion, and that he should have the same rights and access to religious materials as everyone else. Id.

The plaintiff claims that the jail's failure to provide him the Satanic Bible violated his constitutional rights. Id. at 6. He seeks injunctive relief, declaratory relief and punitive damages. Id. at 6-7.

C. Analysis

The plaintiff sues the Manitowoc County Jail and "MTSO" (the Manitowoc County Sheriff's Office) Sheriff Orth and Lieutenant Mancheski. Dkt. No. 1 at 1. He. The plaintiff cannot sue Manitowoc County Jail and MTSO under §1983. That statute allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The Manitowoc County Jail is not a person—it is not an individual subject to suit under §1983. It is true that under some circumstances, a plaintiff may sue a municipality—which is not a person—

under §1983. See Monell v. Dep't of Social Serv's of City of New York, 436 U.S. 658 (1978). But Federal Rule of Civil Procedure 17(b) says that a defendant in a federal lawsuit must have the legal capacity to be sued. State law determines whether an entity has that capacity. Webb v. Franklin Cnty. Jail, Case No. 16-cv-1284, 2017 WL 914736 at *2 (S.D. Ill. Mar. 8, 2017). In Wisconsin, the jail is an arm of the sheriff's department and under Wisconsin law, the sheriff's department is an arm of the County. See Abraham v. Piechowski, 13 F. Supp. 2d 870, 877-79 (E.D. Wis. 1998). This means that neither the jail nor the sheriff's office are "legal entit[ies] separable from the county government which [they] serve[] . . . ." Whiting v. Marathon Cnty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004)). Because the Manitowoc County Jail and the Manitowoc County Sheriff's Office do not have the capacity to be sued, the plaintiff may not proceed against them.

Because he is no longer confined at the jail, the plaintiff also cannot proceed on his claims for injunctive relief. See Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009). On November 3, 2025, the plaintiff notified the court that he had been released from the jail and that his new address is a treatment center in Waukesha, Wisconsin. Dkt. No. 7. There is no indication that the plaintiff again will be confined at the Manitowoc County Jail and therefore be subject to the actions of which he complains here. That means that "[a]ny relief that [the court's] judgment might permit would be purely speculative in nature." Maddox v. Love, 655 F.3d 709, 716–17 (7th Cir. 2011) (quoting Ortiz, 561 F.3d at 668).

5

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment is applicable to the States through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

"Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered." Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009). Where prison officials "personally and unjustifiably place[ ] a substantial burden on [an incarcerated individual's] religious practices," they may violate the individual's constitutional rights. Thompson v. Holm, 809 F.3d 376, 379 (7th Cir. 2016) ("We have repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden."). "A substantial burden '[p]uts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Id. 379-80 (quoting Thomas v. Review Bd., 450 U.S. 707, 717-718 (1981)).

"Prison officials may not discriminate on the basis of religion except to the extent required by the needs of prison administration." Garner v. Muenchow, 715 F. App'x 533, 537 (7th Cir. 2017) (citing Riker v. Lemmon, 798 F.3d 546, 552 (7th Cir. 2015); Maddox v. Love, 655 F.3d 709, 719 (7th Cir. 2011)). "Nondiscrimination means that the officials must respect the religious needs of inmates belonging to minority or non-traditional religions to the same degree as those belonging to larger and more traditional denominations." Id. (citing Maddox, 655 F.3d at 719; Kaufman v. Pugh, 733 F.3d 692, 696 (7th Cir.

6

2013)). On the other hand, prisons do not have to provide "every religious sect or group within a prison with identical facilities or personnel and need not employ chaplains representing every faith" among the population of incarcerated persons. Maddox, 655 F.3d at 718 (citing Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)). "A plaintiff does not state a cause of action under the First Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." Id. 718-19 (citing Young v. Lane, 922 F.2d 370, 374 (7th Cir. 1991)). "[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." Cruz, 405 U.S. at 322 n.2.

The plaintiff alleges that when he requested a Satanic Bible via the jail's kiosk, Mancheski responded that a clergy member could drop one off or that the plaintiff could order one from a bookstore. The plaintiff claims that the jail's failure to provide him with a free Satanic Bible prevented him from practicing his religion. But the plaintiff does not allege that Mancheski said the plaintiff could not have the Satanic Bible, nor does the plaintiff allege that he was unable to obtain a Satanic Bible by having one dropped off or ordering one. He also does not allege that he was otherwise unable to practice his religion at the jail. The plaintiff does not say that he requested, or that the jail failed to provide him, other services related to the practice of his religion.

The plaintiff wanted the jail to provide him with a Satanic Bible, like he says it provides Bibles and Qurans for Christian and Muslim incarcerated

7

persons. But he does not allege that jail staff *purchased* Bibles and Qurans for Christian and Muslim incarcerated persons but refused to purchase one for him. The jail may well have Bibles and Qurans on hand that it provides to incarcerated persons upon request. In that case, the fact that the jail does not happen to have a Satanic Bible on hand does not demonstrate that the jail is refusing to do something for the plaintiff that it does for Christians and Muslims. In short, when the plaintiff asked for a Satanic Bible, Mancheski allegedly gave him options for obtaining one. The plaintiff has not stated a claim for violation of his constitutional rights to freely practice his religion or that the jail discriminated against his religion.

The court will give the plaintiff an opportunity to file an amended complaint regarding his allegations that the jail did not provide him with a Satanic Bible.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form for his amended complaint. See Civil Local Rule 9(b). (E.D. Wis.). The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be

complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaint.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **January 23, 2026**. If the court receives an amended complaint by the end of the day on January 23, 2026, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive either an amended complaint or a request for more time to file one by the end of the day on January 23, 2026, the court will dismiss this case based on the

9

plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the plaintiff must pay the **$345** balance of the filing fee to the court.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are not incarcerated or who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 29th day of December, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**